**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division**

| | | |
|---|---|---|
| **ANTHONY L. WILLIAMS, et al.,** | * | |
| | * | |
| **Plaintiffs** | * | |
| | * | |
| **v.** | * | **Civil Action No.: CBD-19-2584** |
| | * | |
| **GLORIA BROWN BURNETTE,** | * | |
| **PRINCE GEORGE'S DEPARTMENT** | * | |
| **OF SOCIAL SERVICES (DSS)** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |
| | ***** | |

## <u>MEMORANDUM OPINION</u>

Before the Court is Defendant Gloria Brown Burnette, Director of Prince George's Department of Social Services' Motion to Dismiss ("Defendant's Motion"), ECF No. 30. The Court has reviewed Defendant's Motion, the opposition, the reply thereto, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons set forth below, the Court hereby GRANTS Defendant's Motion.

### I.   Factual Background

Plaintiffs Anthony Williams and Connie Williams are the maternal grandparents ("Plaintiff Grandparents") and Plaintiff Courtney Powell is the mother ("Plaintiff Mother") of fourteen-year-old identical twin boys ("the Children"). Am. Compl. 1, ECF No. 29. Defendant Gloria Brown Burnette is the Director of Prince George's Department of Social Services

("PGDSS") and is therefore duty-bound to ensure that PGDSS adheres to all programs administered in accordance with federal and state laws.[1]  *Id.* at 3.

In November 2016, the Children were removed from Plaintiff Mother and stepfather's care after the Children stole laptops from school and the stepfather disciplined the Children with physical abuse.  *Id.* at 4, 6–7.  As a result, the Children "were removed from [Plaintiff Mother] and stepfather for [one] time physical abuse . . . ."  *Id.*  On or about January 2, 2017, Defendant recommended that the courts grant residential custody of the Children to their biological father, Stacy Lovely, *Id.* at 4, 6.  Plaintiff Mother and the Children's biological father have joint legal custody.  *Id.* at 3.  Plaintiffs allege Mr. Lovely has a criminal history that includes burglary and assault charges.  *Id.* at 4.  Plaintiffs contend that at the time Defendant placed the Children in his physical custody, Mr. Lovely was unemployed, did not own a valid driver's license or a vehicle, and did not have a permanent legal address in his name.  *Id.*  Defendant was allegedly aware of these circumstances when the placement was made.  *See generally Id.* at 6–7.

Moreover, Defendant investigated allegations that the Children "were sexually abused when they were [about four years old] by [Plaintiff Mother's] boyfriend."  *Id.* at 4.  PGDSS concluded that the allegations were unsubstantiated but received additional reports that the Children were engaged in sexual behavior with each other.  *Id.* at 5.

In light of these allegations and circumstances, PGDSS removed the Children from the father's custody and recommended that the courts place the Children in separate residential

---

[1] Neither party discusses the significance of *respondeat superior* in their respective memoranda, but Plaintiffs appear to imply its application in an attempt to sue PGDSS through Defendant, Gloria Brown Burnette.  Regardless, of whether Plaintiffs are expressly or impliedly trying to do so, it is not permitted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*.").

treatment centers. *Id.* at 5.  The Children were subsequently placed in Treatment Centers after Defendant allegedly provided false testimony to the Court and prepared false statements to the Treatment Centers regarding the sexual abuse allegation that was deemed "unsubstantiated." *Id.*

Plaintiffs filed suit alleging: (1) violation of 42 U.S.C. § 1983; (2) violation of Plaintiffs "Courtney" Williams and Courtney Powell's joint legal custody order; (3) negligent supervision; and the (4) deprivation of rights of Plaintiff Courtney Powell. *Id.* at 5–13.  Plaintiffs seek compensatory and punitive damages in the amount of $950,000. *Id.* at 12.

## II.  Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012).  The purpose of this rule "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)).  When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must consider the requirements set forth by: (1) Fed. R. Civ. P. 8; (2) *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); and (3) *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See Reaves v. United States*, No. CBD-18-3787, 2019 WL 2177343, at *1 (D. Md. May 17, 2019).  Specifically, a pleading must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Additionally, the Fourth Circuit has stated that "more detail is often required than a bald statement by Plaintiff that he has a valid claim of some type against defendant." *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 326 (4th Cir. 2001) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 at 318 (2d ed. 1990)).

Generally, motions to dismiss pursuant to Rule 12(b)(6) address the legal sufficiency of a complaint rather than the existence of meritorious defenses; however, when the existence of a meritorious defense – such as immunity – is apparent on the face of the complaint, dismissal is appropriate. *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). Federal Rule of Civil Procedure 12(b)(1) "authorizes dismissal for lack of subject-matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). A motion to dismiss based on lack of subject matter jurisdiction is "granted where a claim fails to allege facts upon which the court may base jurisdiction." *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). There are two ways in which a defendant may raise a 12(b)(1) issue. First, "the defendant may dispute the jurisdictional allegations in the complaint," allowing the district court to go beyond the allegations of the complaint. *Barnett*, 193 F. Supp. at 518. Second, "the defendant may contend that the complaint fails to allege facts upon which subject-matter jurisdiction can be based," in which case, "the court must grant the plaintiff the same protection to which he would be entitled under Rule 12(b)(6)." *Id.* In a motion to dismiss, the plaintiff has the burden of proving subject matter jurisdiction since the plaintiff is the party asserting jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

A pleading must furthermore "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A court ruling on a motion to dismiss generally "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *See also E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (averring that a court must "draw all

4

reasonable inferences in favor of the plaintiff").  Legal conclusions couched as factual allegations are insufficient, as are conclusory factual allegations devoid of any reference to any actual events.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### III. Analysis

In determining whether Defendant's Motion should be granted, the Court analyzes: (1) whether Defendant should be granted immunity, and (2) whether Plaintiffs allege sufficient facts to establish a claim under 42 U.S.C. § 1983[2].

### A. Defendant, who acted in her official capacity, is immune from suit in federal court.

Plaintiffs argue that Defendant's Motion should be denied because Defendant was acting in her official capacity as the Director of PGDSS, and is therefore not immune from suit pursuant to 42 U.S.C. § 1983 in federal court.  Pls.' Mem. in Opp'n to Mot. 7, ECF No. 32.  Plaintiffs argue that under the Supreme Court's holding in *Scheuer v. Rhoades*, 416 U.S. 232, 236 (1974), high state officers are not absolutely immune from suit for constitutional violations.[3]  *Id.* at 7–8.  Since the sexual abuse allegation was supposedly the primary reason the Children were admitted into the Treatment Center, Plaintiffs argue that by failing to advise the Treatment Center of the outcome of the investigation, Defendant acted negligently.  *Id.* at 8.  Defendant contends that the motion to dismiss should be granted because Defendant, acting in her official capacity, is

---

[2] To prevail in a claim under 42 U.S.C. § 1983, which allows people to sue state employees in a civil action for the deprivation of rights, Plaintiffs must prove that: (1) they have been "deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States" and (2) "the conduct complained of was committed by a person acting under the color of law."  *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998).

[3] Defendant highlights the finding that the *Scheuer* decision was overruled by *Davis v. Scherer*, 468 U.S. 183 (1984), and is no longer considered valid law.  Def.'s Reply to Pls.' Opp'n to Mot. 2–3, ECF No. 34.

immune from suit in federal court under the Eleventh Amendment.  Def.'s Mem. in Supp. of Mot. 2–3.

The Eleventh Amendment of the United States Constitution bars a suit in law or equity that is brought in federal court against a state, one of its agencies, or any of its officials acting in an official capacity, without a valid abrogation or waiver of the state's sovereign immunity.  U.S. Const. amend. XI; *Tennessee Assistance Corp. v. Hood*, 541 U.S. 440, 446 (2004); *Pennhurst State Sch. & Hosp. v. Haldeman*, 465 U.S. 89, 100 (1984); *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."); Md. Const., Art IV, § 1.  While Maryland has waived its sovereign immunity for certain actions brought in its state courts under the Maryland Torts Claims Act, Md. Code Ann., State Gov't §§ 12–101, 12–104, it has not waived its immunity under the Eleventh Amendment for suits brought in federal court.  *Dixon v. Baltimore City Police Dep't*, 345 F. Supp. 2d 512, 513 (D. Md. 2003).

The Supreme Court of the United States has held that "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the state itself" and is therefore barred by sovereign immunity.  *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Just Puppies, Inc. v. Frosh*, 2020 WL 607026, at *15 (D. Md. Feb. 7, 2020).  To determine whether an official is a state official for purposes of Eleventh Amendment immunity, the Fourth Circuit has identified four factors that should be considered:

> (1) whether the state treasury will be responsible for paying any judgment that might be awarded; (2) whether the entity exercises a significant degree of autonomy from the state; (3) whether [the

> entity] is involved with local versus statewide concerns; and (4)
> how [the entity] is treated as a matter of state law.

*Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n*, 822 F.2d 456, 457–58 (4th Cir. 1987).

While there are four *Ram Ditta* factors to be considered by the Court, the vast majority of circuit

courts have agreed that the state treasury factor is the most important factor and is generally

accorded dispositive weight. *Id.* at 457; *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 49

(1994); *Cash v. Granville County Bd. of Educ.*, 242 F.3d 219, 223–24 (4th Cir. 2001).

In this case, Plaintiffs expressly sue Defendant "in her official capacity." Am. Compl. 1,

3, 10. Therefore, it must be reasoned that the complaint constitutes a suit against the official's

office and, as such, is no different than if Plaintiffs had sued the State of Maryland itself. [4] *Will*,

491 U.S. at 71. Although Defendant has not explicitly asserted that the state treasury will be

responsible for paying any judgment against it, "[t]he Eleventh Amendment bars suit against a

state official in his official capacity for monetary damages, since it would be paid from public

funds in the state treasury." *Giron v. City of Alexander*, 693 F. Supp. 2d 904, 936 (E.D. Ark.

2010); *See also Rodriguez v. New Jersey*, Nos. 13-4101 (RMB), 13-5866 (RMB), 13-6131

(RMB), 13-6132 (RMB), 13-6178 (RMB), 13-6179 (RMB), 2013 WL 5774026 (D.N.J. Oct. 24,

2013) ("[Section] 1983 claims seeking damages from the State or its agencies/agents acting in

their official capacity (*and, thus, payable from the State's treasury*) are barred by the Eleventh

Amendment.") (emphasis added). Since Plaintiffs are suing Defendant, the director of PGDSS

which is considered a State agency, Md. Code Ann., State Gov't § 12–101, the state treasury will

---

[4] In her original motion to dismiss, Defendant raised this concern. Def.'s Mem. in Supp. of Mot.
to Dismiss 6, ECF No. 12. Plaintiffs have made no persuasive argument to address this
fundamental challenge to their ability to pursue this action in federal court. Contrarily, Plaintiffs
have repeatedly averred that Defendant acted under the color of state law. Pls.' Mem. in Opp'n
to Mot. 8. While correct in their assertion, it is fatal to their claims.

be responsible for paying the judgment in this case.  Under the *Ram Ditta* test, Defendant is

considered a state official for purposes of Eleventh Amendment immunity.  *Ram Ditta*, 822 F.2d

at 457–58.  Thus, the Court finds that Plaintiffs' suit arising under 42 U.S.C. § 1983 is barred by

sovereign immunity under the Eleventh Amendment**.**

**B.  Plaintiffs Do Not Allege Sufficient Facts to Establish a Claim Under 42 U.S.C. § 1983.**

Defendant avers that the case should be dismissed because Plaintiffs fail to allege

sufficient facts to establish a claim that can be granted under 42 U.S.C. § 1983 because: (1) all

three Plaintiffs in this case fail to prove that they have been deprived of a constitutional right,

and (2) Plaintiffs fail to pursue an action against a "person" as the term is defined under the

statute.  Def.'s Mem. in Supp. of Mot. 9–10.

**1.  Plaintiff Grandparents fail to establish a claim for relief under 42 U.S.C. § 1983 because the Due Process Clause does not include protection over Grandparents' rights.**

Plaintiffs argue that since Plaintiff Mother has joint legal custody of the Children,

Defendant had the responsibility to communicate with her, or the Plaintiff Grandparents since the

biological father was unable to make decisions regarding the Children due to being arrested and

homeless.  Pls.' Mem. in Opp'n to Mot. 6.[5]  Defendant counters this argument by addressing the

fact that Plaintiffs failed to state a basis for Plaintiff Grandparents' 42 U.S.C. § 1983 claim,

"tacitly acknowledg[ing] that there is no basis for such a claim."  Def.'s Reply to Pls.' Opp'n to

Mot. 2.

The United States Supreme Court has stated that while the Due Process Clause protects

the fundamental rights of parents to make decisions regarding the care, custody, and control of

---

[5] According to Plaintiffs, Plaintiff Grandparents were instrumental in raising the Children and even provided shelter and support until they were five years old to allow Plaintiff to continue her education. Pls.' Mem. in Opp'n to Mot. 4.

their children, *Troxel v. Granville*, 530 U.S. 57, 66 (2000), that right does not transfer to grandparents.  *See Koshko v. Haining*, 398 Md. 404, 423 (2007) ("Grandparents . . . do not enjoy a constitutionally recognized liberty interest in visitation with their grandchildren.") (citing *L.F.M. v. Dep't of Social Servs.*, 67 Md. App. 379, 386–88 (1986)).

In this case, neither Plaintiff Grandfather nor Plaintiff Grandmother claim a specific injury from any action taken by Defendant and neither has a constitutionally protected liberty right to direct and control the upbringing of the Children.  Thus, the Court finds that Plaintiff Grandparents' involvement in raising the Children is not enough to support a finding that the Constitution recognizes and grants Plaintiff Grandparents with a legal interest regarding the Children.  Therefore, the Court finds that Plaintiff Grandparents fail to state a basis for their claim under 42 U.S.C. § 1983.

> **2. Plaintiff Mother fails to establish a claim for relief under 42 U.S.C. § 1983 because she only enjoyed "joint" legal custody of the Children, permitting Defendant to move forward without obtaining her consent.**

Plaintiffs further argue that by failing to inform Plaintiff Mother of the investigation concerning the Children whom she has joint legal custody of, there is sufficient evidence to support the finding that Defendant deprived Plaintiff Mother of her constitutional rights.  Pls.' Mem. in Opp'n to Mot. 5–7.  Defendant disputes this argument, averring that Plaintiffs offer no legal support for their assertion that Defendant's provision of child welfare services would give rise to a 42 U.S.C. § 1983 claim.  Def.'s Reply to Pls.' Opp'n to Mot. 2–3.

In the State of Maryland, parents who share legal custody of a child "have the same powers and duties in relation to the child."  Md. Code Ann., Fam. Law § 5–203(b)(2).  The Court of Appeals of Maryland has stated:

> Legal custody carries with it the right and obligation to make long range decisions involving . . . matters of major significance

> concerning the child's life and welfare.  Joint legal custody means
> that both parents have an equal voice in making those decisions.

*Taylor v. Taylor*, 306 Md. 290, 296 (1986).  Although parents have a "private, fundamental

liberty interest involved in retaining the custody of one's child and integrity of one's family,"

*Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 394 (4th Cir. 1990), familial

privacy is "neither absolute nor unqualified and may be outweighed by a legitimate

governmental interest."  *Hodge v. Jones*, 31 F.3d 157, 163–64 (4th Cir. 1994).  In fact, "it is

well-settled that the requirements of [due] process may be delayed where emergency action is

necessary to advert imminent harm to a child."  *Jordan by Jordan v. Jackson*, 15 F.3d 333, 343

(4th Cir. 1994).

In this case, because the parents share legal custody of the Children, under Maryland law,

each parent had an equal and independent right to make decisions for the Children.  Md. Code

Ann., Fam. Law § 5–203(b)(2).  Plaintiffs aver that Defendant deprived Plaintiff Mother of her

rights by denying an "equal/same opportunity to receive and make recommendations" concerning

the Children's treatment.  Am. Compl. 10.  Plaintiffs further claim that by failing to ensure that

"*all* parties were advised to interviews, medical recommendation[s] and sexual abuse

allegation[s]," Defendant did not adhere to the Joint Legal Custody order.  *Id.* (emphasis added).[6]

Thus, the Court finds that Defendant did not violate Plaintiff Mother's rights because although

Defendant did not obtain Plaintiff Mother's consent, it can be inferred that Defendant did obtain

consent from a custodial parent.  Since Defendant became involved with the father's consent, the

actions taken by Defendant "affects the parental relationship only incidentally and is not

sufficient to establish a violation of a[n] identified liberty interest."  *Hodge*, 31 F.3d at 164.

---

[6] Though it is not explicitly stated by Plaintiffs in the Amended Complaint, the language used by Plaintiffs to describe the situation aligns with Defendant's assertion that Mr. Lovely, who at the time, shared legal custody of the Children with Plaintiff Mother, consented to treatment.

Therefore, because the father's consent was sufficient to authorize Defendant's provision of child welfare services, the claim that Defendant violated Plaintiff Mother's constitutional rights cannot be the basis for Plaintiffs' claim under 42 U.S.C. § 1983.

### 3. Defendant does not fall under 42 U.S.C. § 1983's definition of a "person."

Defendant further avers that Plaintiffs, "in naming Gloria Brown Burnette in her official capacity as Defendant . . . fail[ed] to allege facts to establish that their rights were deprived by a "person" under [42 U.S.C. § 1983]."  Def.'s Mem. in Supp. of Mot. 9.  Plaintiffs fail to comment on this issue.

In the State of Maryland, "an employee of a county who is assigned to a local department of social services" is considered "state personnel."  Md. Code Ann., State Gov't § 12–101; *See e.g.*, *In re Adoption/Guardianship No. 2633 in Circuit Court of Washington County*, 101 Md. App. 274, 301 (1994) (holding that the Director of a local social services agency acted as a state official and was therefore immune against monetary liability under § 1983).  Md. Code Ann., Hum. Serv. § 3–201 declares that in the creation of local departments, "[a] local department shall be referred to as the department of social services preceded by the name of the county."  Md. Code Ann., Hum. Serv. § 3–201.  Additionally, a local department of social services is considered a state agency and thus, "claims against . . . DSS supervisors in their official capacities [are] . . . barred by Eleventh Amendment sovereign immunity."  *Lowery v. Prince George's County, Md.*, 960 F. Supp. 952, 955 (D. Md. 1997).

The Supreme Court of the United States has ruled that "state officials literally are persons [but] a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office."  *Will*, 491 U.S. at 71.  However, "neither a State nor its officials *acting in their official capacities* are "persons" under § 1983."  *Id.* (emphasis

added).  In contrast, "local governments, unlike state governments, are 'persons' under § 1983

and can be sued for money damages under § 1983 when governmental law, policy or custom

contributed to the violation of federal constitutional or statutory rights."  *Ritchie v. Donnelly*, 324

Md. 344, 356 (1991); *See also Monell v. Dep't of Soc. Services of City of New York*, 436 U.S.

658, 690, n.55 (1978) (holding that "local government officials sued in their official capacities

are "persons" under § 1983 . . . [when] a local government would be suable in its own name").

      Further, although Defendant did not raise this issue:

> [t]o determine whether a government official is a local government
> official, as opposed to a State official, for purposes of [sustaining
> liability under] § 1983, the court considers whether he or she is
> acting as a 'final policymaker for the local government in a
> particular area, or on a particular issue.'

*Proctor v. Wells Fargo Bank, N.A.*, 289 F. Supp. 3d 676, 687 (D. Md. 2018) (quoting *McMillian*

*v. Monroe Cty., Ala.*, 520 U.S. 781, 786 (1997)).  Government officials who are determined to be

final policymakers for the local government are considered local government officials and can

therefore be sued in their official capacities as "persons" under 42 U.S.C. § 1983.  *See generally*

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 485  (1986) (finding that the defendant, County

Prosecutor, "in ordering the Deputy Sheriffs to enter petitioner's clinic . . . was acting as the final

decisionmaker for the county" and therefore, the county could be held liable under 42 U.S.C.

§ 1983); *Dotson v. Chester*, 937 F.2d 920, 934 (4th Cir. 1991) (finding that the defendant,

Dorchester County Sheriff, in managing and operating the county jail, "holds the final county

policymaking authority over the county jail," therefore, could be held liable under 42 U.S.C. §

1983); *Santos v. Frederick County Bd. of Commissioners*, 346 F. Supp. 3d 785, 2018 WL

4654696, at *795, 797–98 (D. Md. 2018) (finding that the defendant, Sheriff Jenkins was "the

final policymaker for Frederick County over the 'particular issue' in question," and thus the county was liable under 42 U.S.C. § 1983).

In this case, Defendant – is the Local Director of PGDSS, classifying her as "an employee of a county who is assigned to a local department of services."  Md. Code Ann., State Gov't § 12–101.  Hence, under Maryland law, Defendant is considered state personnel and therefore, immune from suit.  For this reason alone, Defendant cannot be considered a "person" under 42 U.S.C. § 1983.

Moreover, as the Local Director of PGDSS, Defendant administers the social service and public assistance activities in the county.  Md. Code Ann., Hum. Serv. §§  3–302(a)(2).  Under Maryland law, other responsibilities of a local director include:

> (1) long-range and short-range planning for the functions and objectives of the local department; (2) administering the operations of the local department; (3) . . . appointing personnel of the local department in accordance with the State Personnel and Pensions Article; (4) improving administrative and social work practices and procedures; (5) submitting periodic reports and evaluations that the Social Services Administration and the Family Investment Administration require; (6) submitting an annual report to the local board; and (7) undertaking any other responsibilities required by the Social Services Administration, the Family Investment Administration, or applicable laws.

Md. Code Ann., Hum. Serv. § 3–302(c)(1)–(7).  In light of this explanation on the responsibilities of a "local director," the Court finds that Defendant does not act as a final policymaker for the local government because Defendant is tasked with implementing PGDSS's policies, not creating them.  Therefore, although local government officials who are sued in their official capacities are "persons" under § 1983 in some cases, this is not one of those cases.  Since PGDSS cannot be sued in its own name, and because Defendant is considered state personnel,

the Court finds that Plaintiffs cannot pursue an action here against a "person" as that term is defined by 42 U.S.C. § 1983.

### 4. The existence of negligence on part of Defendant does not support a claim arising under 42 U.S.C. § 1983.

Plaintiffs aver that Defendant violated 42 U.S.C. § 1983 by acting negligently while in her official capacity as the Director of PGDSS by failing to ensure that Plaintiff Mother had access to legal counsel and failing to ensure that the pre-existing custody order was adhered to. Am. Compl. 10–11.  Defendant claims that this argument fails because while Plaintiffs allege that Defendant acted negligently, they never allege that she deliberately acted so as to deprive Plaintiffs of their rights.  Def.'s Mem. in Supp. of Mot. 9–10.  Similarly, although Plaintiffs allege that Defendant made "false statements" and gave "false testimony" that harmed Plaintiffs' interests, Defendant argues that because Plaintiffs fail to provide facts to establish the character of the allegedly false statements, Plaintiffs fail to prove that Defendant deprived them of a constitutional right for purposes of 42 U.S.C. § 1983.  *Id.* at 12.

Under Maryland law, "negligence means doing something a person using reasonable care would not do, or not doing something a person using reasonable care would do."  *Walker v. Nat'l R.R. Passenger Corp.*, 703 F. Supp. 2d 495, 502 (D. Md. 2010).  "Ordinary or reasonable care means 'that caution, attention or skill a *reasonable person* would use under similar circumstances.'"  *Id.* (emphasis added).  To establish a *prima facie* case of negligence, the plaintiff must allege facts demonstrating:

> (1) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty.

*Remsburg v. Montgomery*, 376 Md. 568, 582 (2003).

However, both the United States Supreme Court and the Fourth Circuit have held that in order to successfully plead a cause of action under 42 U.S.C. § 1983, a plaintiff must allege more than a defendant's negligent interference with a plaintiff's constitutional rights.  *Daniels v. Williams*, 474 U.S. 327, 331–32 (1986); *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995).  The Supreme Court has further held that negligent acts by State officials involve no affirmative abuse of governmental power – which is what the Due Process Clause was meant to prevent – and therefore, allowing 42 U.S.C. § 1983 claims based on theories of negligence would "trivialize the centuries-old principle of due process of law."  *Daniels*, 474 U.S. at 332; *See also Pink*, 52 F.3d at 75 ("The language and purpose of the Due Process Clause . . . restrict[s] violations thereof to official conduct that entails some measure of deliberateness.").

In this case, Plaintiffs repeatedly allege that Defendant's actions were negligent but there is no allegation that any of her actions were deliberate.  *See generally* Am. Compl. ¶¶ 6, 13, 15, 16, 20, 3, 5, 6, 7, 11, 13, 25, 26, 27, 28, 30, 31.[7]  Thus, without providing proof that Defendant acted deliberately to deprive Plaintiffs of a constitutional right, *Daniels*, 474 U.S. at 331, the Court finds that Plaintiffs' claims must fail.  Given the Court's ruling, there is no need to reach the other arguments regarding Plaintiff's ability to pursue these claims due to a lack of standing or any merit-based argument.

---

[7] The Amended Complaint contains two sets of sequential paragraph numbers.  To avoid confusion, the first five paragraphs cited (¶¶ 6, 13, 15, 16, 20) refer to the first set of numbers and the subsequent paragraphs cited refer to the second set of numbers (¶¶ 3, 5, 6, 7, 11, 13, 25, 26, 27, 28, 30, 31).

**IV. Conclusion**

For the reasons set forth above, Defendant's Motion is GRANTED.  The case shall be

dismissed with prejudice.


August 14, 2020                                                      /s/
                                          Charles B. Day
                                          United States Magistrate Judge